1
2
3
4
5
6
7
8
9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10
11

INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS,
DISTRICT 160,

12

Plaintiff,

13

v.

14

RABANCO, LTD.,

15

Defendant.

CASE NO. C05-0753C

ORDER

16
17

     This matter comes before the Court on Plaintiff's Motion for Summary Judgment (Dkt. No. 9)

18

and Defendant's Motion for Stay contained in its response to Plaintiff's motion (Dkt. No. 15).  Having

19

considered the papers submitted by all parties and finding oral argument unnecessary, the Court

20

GRANTS Plaintiff's motion and DENIES Defendant's motion for the following reasons.

**I.     FACTS**

21
22

     Plaintiff International Association of Machinists and Aerospace Workers, District 160 ("Union")

23

moves for summary judgment on the issue of arbitrability, and seeks an order dismissing this case in

24

deference to a pending arbitration already filed arising from a labor dispute.  The Union filed the

25

arbitration under the terms of a collective bargaining agreement ("CBA") that contains the following

26

ORDER – 1

provision: "For purposes of this Agreement, the term 'grievance' means any dispute between the Employer and the Union, or between the Employer and any employee, concerning the effect, interpretation, application, claim of breach or violation of this Agreement, *or any dispute which may arise between the parties*." (Phillips Decl. Ex. A. at 19, ¶ 21.1 (emphasis added).) The CBA refers to arbitration all "complaints arising among the employees in the shop over the interpretation or application of any specific provisions of [the CBA]." (*Id.* at ¶ 21.4.)

The events leading up to the arbitration are not disputed: five of Defendant's employees (known as "working forepersons" or "working leads"), who were considered by all parties to be part of the collective bargaining unit at the signing of the CBA, were subsequently redesignated by Defendant as "supervisors" outside the scope of the CBA. As such, the five employees were given the choice of resigning their union membership, being demoted to a position the Defendant deemed within the collective bargaining unit, or quitting. The employees filed a grievance, protesting Defendant's "attempt[] to reclassify the foreman['s]s job as a non bargaining unit position. This position has always been bargaining unit work." (*Id.* Ex. B.)

The parties then apparently followed the terms of the CBA in proceeding to arbitration and agreeing on an arbitrator. (*See id.* Ex. D.) Shortly thereafter, however, Defendant withdrew from the arbitration, arguing that the employees at issue were by definition supervisors and therefore outside the scope of the CBA and its arbitration provision. (*See id.* Ex. E.) Following correspondence between the parties, the Union filed this action.

After the Plaintiff filed this motion, the Court was notified that Defendant had also filed a petition with the National Labor Relations Board ("Board") seeking a "unit clarification," or a ruling as to whether the five working forepersons qualify as supervisors under § 2(11) of the Labor-Management Relations Act ("Act") and thus should be excluded from the collective bargaining unit. The Board, Region 19, refused to make such a ruling and entered an order to show cause why the petition should not be dismissed: "The Employer's petition is a midterm filing and involves a request to clarify *an historical*

ORDER – 2

1   *inclusion* . . . and there is no attempt to confirm a traditional exclusion." (Campbell Ltr. of Aug. 26,

2   2005, attach. 1, at 3 (emphasis added).)

3   **II.      PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

4          As in all questions of the arbitrability of labor disputes, "[t]his is not a case about who wins and

5   who loses the dispute over the grievance. It is, rather, a case about who should decide the question."

6   *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 523 (9th Cir. 1991).

7   Plaintiff's motion presents two primary questions. First, does the Court have jurisdiction under § 301 of

8   the Act to hear this dispute or does the Board have exclusive jurisdiction? Second, is there any genuine

9   issue of material fact as to the parties' intent (as evidenced by the terms of the CBA) to arbitrate this

10  dispute? The Court addresses each of these questions in turn.

11         **A.      Jurisdictional Issues**

12         The parties define the underlying dispute differently: according to Plaintiff, it is a question of the

13  appropriate remedy under the CBA; according to Defendant, it is whether their job responsibilities and

14  titles qualified them as "supervisors" as defined by the Act, 29 U.S.C. § 152(11).   The parties further

15  disagree as to whether the "working forepersons" were ever legally a part of the collective bargaining

16  unit, and whether their exclusion now is purely a matter for the Board, rather than an arbitrator, to

17  determine. Defendant argues against the historical presumption of arbitrability resulting from broad

18  arbitration clauses such as the one in this case. *See, e.g.*, *Morello v. Fed. Barge Lines, Inc.*, 575 F. Supp.

19  87, 91 (E.D. Mo. 1983) (noting that agreements to arbitrate "any dispute" have "frequently been

20  construed by the courts to require arbitration of any grievance not expressly excluded, without weighing

21  the claims on the merits") *aff'd*, 746 F.2d 1347 (8th Cir. 1984).  Defendant further argues that this

22  presumption does not apply where, as Defendant argues is the case here, the core dispute is over the

23  statutory classification of the working forepersons, rather than an interpretation and application of the

24  CBA. *See Wright v. Universal Maritime Serv. Corp.*, 525 U.S. 70, 78–79 (1998) (cannot refer for

25

26  ORDER – 3

arbitration any case in which "the ultimate question for the arbitrator would be not what the parties have agreed to, but what federal law requires").

The parties agree, however, that the Court's jurisdictional inquiry is whether under § 301 this dispute "can be characterized as primarily representational or primarily contractual." *Serv. Employees Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d 977, 983 (9th Cir. 2003). Put differently, is the dispute here primarily a legal question of whether the five working forepersons qualified as supervisors under § 2(11) of the Act (in which case the Board would have exclusive jurisdiction), or is it simply whether the CBA "is susceptible [of] an interpretation that covers the asserted dispute" (in which case the Court has jurisdiction)? *Id.* (internal quotes omitted). The Ninth Circuit has noted that a case "does not fall on the NLRB's primary jurisdiction side of the jurisdictional line merely by having representational overtones." *Id.* at 984 (internal quotes omitted).

The Board's decision in this case and its prior cases demonstrate that Defendant's inclusion of the working foremen in the unit (however inadvertent it may have been) and subsequent redesignation do not vest primary jurisdiction with the Board. In its order to show cause, the Board, Region 19, noted that "it appears the unit has historically included employees classified as 'working forepersons' and, at the same time, that the terms of the [CBA] have been applied to that classification." (Campbell Ltr. attach. 1, at 1.) It further viewed the Defendant's actions here as an attempt "to change the composition of a contractually agreed-upon unit by the exclusion or inclusion of certain employees." (*Id.* at 2.) The Board thus rejected Defendant's petition as an impermissible midterm clarification, citing *Edison Sault Co.*, 313 N.L.R.B. 753, 753 (1994) ("The Board has traditionally held that a unit clarification petition submitted during the term of a [CBA] specifically dealing with the disputed classification will be dismissed if the party filing the petition did not reserve its right to file during the course of bargaining."). Further, there is no bar to arbitration here because "working forepersons" are specifically mentioned in the CBA. (*See* Phillips Decl. Ex. A. at 19, ¶ 4.3); *cf. Williams Transp. Co.*, 233 N.L.R.B. 837, 838 (1977) (Dispute was not "based upon an interpretation of the [CBA]," and thus committed to exclusive Board jurisdiction,

ORDER – 4

when "[job] classification is not mentioned in the unit description and there was no existing wage rate for the position."). Accordingly, the Board concluded that "the facts of the instant case do not appear to present a situation ripe for Board clarification." (Campbell Ltr. attach. 1, at 3.) The Court cannot say, therefore, that this case "depend[s] entirely on the resolution of the question of whom the union represents," *St. Vincent*, 344 F.3d at 983 (internal quotes omitted), especially when the Board itself has found that "the terms of the [CBA] have been applied to [working foremen]." (Campbell Ltr. attach. 1, at 1); *see also Edison*, 313 N.L.R.B. at 753

The Board's actions in this matter and its precedents demonstrate that it is *not* the case that "the ultimate question for the arbitrator would be . . . what federal law requires"; rather, it would be "what the parties have agreed to" under the CBA. *Wright*, 525 U.S. at 79. Accordingly, the Court finds that primary jurisdiction in this matter does not vest with the Board.[1]

### B.    Relevant Legal Standards

Having exercised jurisdiction to hear Plaintiff's motion, the Court turns to the applicable legal standards. First, Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions and provides in relevant part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In determining whether an issue of fact exists, the court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

Next, the Court must apply this summary judgment standard to the standards of review applicable in the collective-bargaining context. Under § 301 of the Act, "[s]uits for violation of contracts between

---

[1] With jurisdiction vested in this Court, there is no reason to stay this action in deference to the Board. Accordingly, Defendant's motion for stay is DENIED.

ORDER – 5

1   an employer and a labor organization representing employees in an industry affecting [interstate]

2   commerce" may be brought in the district courts.  29 U.S.C. § 185(a).  The Court's review in such cases

3   is narrowly circumscribed: "the judicial inquiry under § 301 must be strictly confined to the question

4   whether the reluctant party did agree to arbitrate the grievance . . . ."  *United Steelworkers of Am. v.*

5   *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).  Indeed, unless the Court can say with

6   "positive assurance that the arbitration clause is not susceptible [of] an interpretation that covers the

7   asserted dispute," the motion must be granted.  *Id.* at 585 (internal quotations omitted).  "[A]ll doubts

8   should be resolved in favor of coverage."  *Id.* at 584.

9        Applying the summary judgment standard to this collective-bargaining dispute, the question

10  properly before the Court is whether there is any genuine issue of material fact arising from the parties'

11  agreement to arbitrate this dispute.  As explained below, the Court finds that there are no such factual

12  issues.

13  **C.      The Collective Bargaining Agreement's Arbitration Clause**

14       Under the legal standards described above, the Court cannot say with "positive assurance" that

15  the arbitration provision in the CBA does not cover this dispute, nor that this dispute is primarily

16  representational.  There is simply no disagreement that the five working forepersons at issue were

17  deemed part of the Union—and thus covered by the CBA—when the parties entered the CBA.

18  Defendant explains this as a mere oversight on the part of its corporate parent, which "learned that a

19  couple of its subsidiaries around the country had allowed supervisors and/or managers to retain their

20  union membership after being promoted into management, apparently to allow those individuals to

21  continue their eligibility for union pension and health and welfare benefits."  (Def.'s Opp'n 6.)  But

22  Defendant cannot create a genuine issue of material fact about the applicability of the CBA by arguing

23  that it should not have included the working foremen in the collective bargaining unit.  Defendant admits

24  that it voluntarily included the working foremen in the collective bargaining unit, even if its corporate

25  parent later disapproved of this decision.  The Ninth Circuit has held that such voluntary inclusion of

26  ORDER – 6

1    supervisors in the collective bargaining unit does not invalidate the terms of a CBA. *See E.G. & H. Inc.*

2    *v. NLRB*, 949 F.2d 276, 279 (9th Cir. 1991) (noting that it would be "destructive of stable bargaining

3    relationships to permit an employer, after voluntarily agreeing to bargain with a particular unit, to

4    repudiate [a CBA] on the ground that the unit was not appropriate").

5         Indeed, applying these precedents to the plain language of the CBA illustrates that the dispute is

6    arbitrable. The CBA states that a grievance encompasses "any dispute which may arise between the

7    parties." Although Defendant argues that there is a discrepancy as to the use of "grievance" in that

8    clause, and the use of "complaint" in the arbitration clause, the CBA is clearly "susceptible [of] an

9    interpretation that covers the asserted dispute." *Steelworkers*, 363 U.S. at 585; *see also* E. ALLAN

10   FARNSWORTH, CONTRACTS, § 7.11, at 471 (3d ed. 1999) ("The agreement is therefore to be read as a

11   whole and an interpretation that gives effect to every part of the agreement is favored over one that

12   makes some part of it mere surplusage."). Given this contractual language, Defendant's after-the-fact

13   repudiation of the working foremen as part of the unit is insufficient to create a genuine issue of material

14   fact. *Cf. E.G. & H.*, 949 F.2d at 279–80 ("[W]hile an employer could not be compelled to recognize a

15   union containing supervisors, the employer certainly could do so voluntarily.") (citing *NLRB v. News*

16   *Syndicate Co.*, 365 U.S. 695, 699 n.2 (1961)). Nor does it preclude arbitration of this matter. *Cf.*

17   *Peerless Pressed Metal Corp. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO*, 451 F.2d 19,

18   20 (1st Cir. 1971) (even where CBA expressly excluded supervisors, arbitration clause was broad enough

19   to encompass dispute over supervisors' accrued seniority).

20

21

22

23

24

25

26   ORDER – 7

**III.    CONCLUSION**

There is no jurisdictional barrier to the Court's adjudication of this motion, and no genuine issue of material fact as to the parties' intent to arbitrate this collective-bargaining dispute. Accordingly, the Court GRANTS Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Stay.

SO ORDERED this 30th day of September, 2005.

UNITED STATES DISTRICT JUDGE

ORDER – 8